# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs May 15, 2012

## STATE OF TENNESSEE v. DENNY JAMES McABEE

### Direct Appeal from the Criminal Court for Davidson County
### No. 2011-A-717    Steve Dozier, Judge

### No. M2011-01524-CCA-R3-CD - Filed August 24, 2012

Defendant, Denny James McAbee, was indicted by the Davidson County Grand Jury for the offenses of aggravated burglary, evading arrest, and criminal impersonation. Pursuant to a negotiated plea agreement, he pled guilty to aggravated burglary as a persistent offender with a range of punishment of not less than 12 years nor more than 15 years. According to the plea agreement, the exact length of the sentence and the manner of its service would be determined by the trial court after a sentencing hearing. The other charges were dismissed. The trial court sentenced Defendant to 14 years, rejected Defendant's request to receive the only alternative sentence legally available, which was community corrections, and thus ordered Defendant to serve the sentence in the Department of Correction. On appeal, Defendant argues that the trial court should have ordered the sentence to be served in the community corrections program. Defendant does not contest the length of the sentence. After a thorough review, we affirm the judgment of the trial court.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed

THOMAS T. WOODALL, J., delivered the opinion of the court, in which JOSEPH M. TIPTON, PJ., and NORMA MCGEE OGLE, J., joined.

Manuel B. Russ, Nashville, Tennessee, (on appeal), and Dawn Deaner, District Public Defender; and Lisa D'Souza, Assistant Public Defender, (at trial), for the appellant Denny James McAbee.

Robert E. Cooper, Jr., Attorney General and Reporter; Clark B. Thornton, Assistant Attorney General; Victor S. (Torry) Johnson, III, District Attorney General, and Rachel Sobrero, Assistant District Attorney General, for the appellee, State of Tennessee.

# OPINION

At the guilty plea hearing the State provided the following facts in support of the guilty plea.

[PROSECUTOR]: Had this case gone to trial, the State's proof would have shown that on January 3rd, 2011 at approximately 8:50 a.m. the defendant was observed by Daniel Walker sitting on a porch in Robert Clements residence a[t] 1425 McGavock Pike. Mr. Walker heard a noise and the defendant was no longer on the side porch. Another witness Carrie McKinsey (phonetic) was walking a dog in the back yard of 1427 ½ A McGavock Pike talking on a cell phone she saw this happen and called police. Officers responded to 1425 McGavock Pike where one of the officers saw the defendant coming off the front porch with a gree[n] bag in his hand. The bag contained a laptop computer. The defendant was also in possession of the victim's Ipod.

The defendant was placed into the police vehicle at that time and gave the police the name of Brian Allan with the date of birth of 3/13/72, which was false. A pane of glass was broken out of the side door of that residence where the defendant made entry. As the victim and witness was being interviewed, the defendant escaped from custody. After a foot chase and a K-9 conducted track, the defendant was placed into custody again in a back yard. In his back pocket a blue tooth device was found and a gold ring. The defendant was interviewed by Detective Beaty where in the interview the defendant stated that he went to the victim's residence with another unknown individual.

The total value of the property that was taken from the residence was more than $500. Therefore, fingerprints were taken from this case and they were identified to the defendant. Based on these facts, the

-2-

> state recommends the previously announced disposition.

THE COURT:      And is Mr. McAbee a range three offender?

[PROSECUTOR]:   He is, Your Honor.

Defendant was the only witness who testified at the sentencing hearing. The State submitted as proof the pre-sentence report and certified copies of prior convictions of Defendant, all of which were made exhibits by the trial court. We glean the following pertinent facts from all the evidence at the sentencing hearing. Defendant was 39 years old at the time of the offense on January 3, 2011. He had been released from the Tennessee Department of Correction because he had "flattened out" a sentence on October 21, 2010, 74 days before he committed the aggravated burglary. He had used cocaine on a regular basis the last 14 months that he was incarcerated in the Department of Correction. He obtained cocaine and marijuana that was secretly brought into the prison during visitations with other inmates, who then transferred the drugs to Defendant. Defendant obtained cocaine on the third day after he was released. When he was released, he had been in custody over 14 years.

The following is noted in the pre-sentence report:

> The Defendant's arrest records in Davidson County show he has three probation violations and one parole revocation. His probation in case number 89-S-1376 and 89-S-1377 was revoked on 06/08/90. He was incarcerated and was granted parole on 11/19/90. On 12/10/91, he absconded and was arrested on 03/21/92. His parole was revoked to serve on 05/20/92.
>
> In case number 93-A-78, the Defendant was sentenced to three years of probation on 02/18/93. He was arrested for a probation violation on 03/02/94. The violation was sustained and he was reinstated to intensive probation on 03/11/94. On 06/18/94, he was again arrested for a probation violation. He was ordered to complete Lifelines and then be reinstated to probation; however, records indicate that a jail order was enforced on 09/01/94 and his sentence placed into effect.

Defendant acknowledged that he "had been written up many times while incarcerated." The pre-sentence investigative officer checked the Department of Correction records after this admission to him by Defendant. Those records disclosed that Defendant

had 73 disciplinary write-ups. Offenses ranged "from disrespect and creating a disturbance to assault of an officer and attempted escape." The pre-sentence report noted that Defendant had been found "guilty" of each disciplinary offense.

Between 1990 when he was 18 years old, and 1997 when he was 25 years old (when he received sentences that kept him in custody until October, 2010) Defendant had the following criminal convictions: aggravated robbery, aggravated burglary, grand larceny, felony escape, three convictions for misdemeanor escape, two convictions for Class D felony theft, three convictions for misdemeanor theft, misdemeanor vandalism, two convictions for joyriding, misdemeanor possession of marijuana, criminal trespass, assault, criminal impersonation, two convictions for driving on a revoked license, and driving while license suspended.

Defendant testified that he grew up in Nashville. His father, an alcoholic, and his mother "split up" when Defendant was 15 or 16 years old. At that time, Defendant was unsupervised and "started running with the wrong crowd and started doing drugs." Defendant started using cocaine at age 17 and continued to do so up until the day he was arrested on January 3, 2011. He went to a drug treatment program on one occasion, spent one week in treatment, left to report to jail to serve 30 days, and never returned to treatment.

Defendant testified that he was thinking about using cocaine while he was riding in the car with his sister on the way home from being released from prison after serving 14 years and 7 months. When asked to describe how he spent his time between his release from prison on October 21, 2010 and his arrest for the offense in the case *sub judice*, Defendant testified,

> I basically - - I did two odd jobs for a guy. I walked around [ ] place to place, ate a couple of meals here and there. Begged for money, would see people at a store. They would want [ ] coke, so I would get the coke for them, clip some of it off, take it back to them, smoke, spend what little money I had on them [sic]. And basically at the end it lead up to me doing something stupid again.

By "something stupid," Defendant stated that he was referring to his aggravated burglary which led to his arrest on January 3, 2011.

Defendant acknowledged that when he was arrested for his crime he gave the officers a false name, and when given the opportunity, he ran away from the patrol car after his arrest. Defendant testified that he was "throwing [himself] at the mercy of the [court and [ ] begging for some kind of help, some kind of treatment." Defendant testified that he could go to

treatment at Ephesus House. He also acknowledged that he was willing "to serve some time" in his sentence.

On cross-examination, Defendant admitted that he was a "go-between" for persons who wanted cocaine but who were "scared to drive into the apartments or walk into the apartments." Defendant would take these persons' money to the dealer(s), and return with the cocaine. Defendant obtained the cocaine he used by providing this "service." Defendant testified that an accomplice, whom he only knew as "John," talked him into going to the victim's house to "get us some money." Defendant claimed that he had no idea at that time that "John" intended to burglarize the victim's home, even though he knew "John" intended to commit theft. He claimed that "John" must have seen the police car approach while Defendant was inside the house, which caused "John" to leave and thus avoid arrest.

Subsequent to the sentencing hearing, the trial court entered a sentencing order setting the sentence at 14 years to serve by incarceration in the Department of Correction. The trial court found that two statutory enhancement factors applied: (a) "[t]he defendant has a previous history of criminal convictions or criminal behavior, in addition to those necessary to establish the appropriate range;" and (b) "[t]he defendant, before trial or sentencing, failed to comply with the conditions of a sentence involving release into the community." Tenn. Code Ann. § 40-35-114(1) and (8). The trial court also found one applicable statutory mitigating factor, that the "Defendant's criminal conduct neither caused nor threatened serious bodily injury."

The trial court specifically stated in its sentencing order that in reaching its sentence determination the court had considered statutory factors provided in Tennessee Code Annotated section 40-35-210(b), including the statutory principles of sentencing and the arguments as to sentencing alternatives. We note that the *only* alternative sentencing option sought by Defendant was a sentence to community corrections, a fact recognized by the trial court, Defendant, and Defendant's counsel at the guilty plea hearing. The trial court specifically noted that it considered the sentencing considerations found in Tennessee Code Annotated section 40-35-103(1)(A),(B), and (C) in reaching its decision that Defendant must serve the sentence by incarceration, and not in the community corrections program. That statute provides,

(1)     Sentences involving confinement should be based on the following consideration:

(A)     Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;

(B)     Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or

(C)     Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant.

Tenn. Code Ann. § 40-35-103(1)(A),(B), and (C).

Considering also the lack of, or the potential for, rehabilitation, the trial court found that Defendant had an extensive prior criminal record of convictions and criminal conduct, and "a history of failure on probation and parole." The trial court specifically added that the sentence of 14 years was to be served by incarceration "based on numerous prior attempts at alternative sentencing."

*Analysis*

On appeal Defendant argues that the trial court did not properly consider the option of community corrections as an alternative sentence and that the trial court did not properly apply the purposes of sentencing as set forth in the sentencing statutes. Specifically, Defendant asserts that the trial court failed to follow the requirements of Tennessee Code Annotated section 40-35-102(3)(C) to encourage effective rehabilitation of defendants, and section 40-35-102(5). Defendant argues the latter code section requires that "confinement and use of the States's detention facilities should be reserved for the most serious and habitual offenders." The State disagrees. We agree with the State. In fact, at the outset, we conclude that Defendant is one of the individuals who is, as described, one of "the most serious and habitual offenders" for whom incarceration should be reserved.

On appeal, the party challenging the sentence imposed by the trial court has the burden of establishing that the sentence is erroneous. *See* Tenn. Code Ann. § 40-35-401, Sentencing Comm'n Comments; *see also State v. Arnett*, 49 S.W.3d 250, 257 (Tenn. 2001). When a defendant challenges the length, range, or manner of service of a sentence, it is the duty of this Court to conduct a de novo review on the record with a presumption that the determinations made by the court from which the appeal is taken are correct. Tenn. Code Ann. § 40-35-401(d). However, this presumption "is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." *State v. Pettus*, 986 S.W.2d 540, 543-44 (Tenn. 1999); *see also State v. Carter*, 254 S.W.3d 335, 344-45 (Tenn. 2008). If our review reflects that the trial court failed to consider the sentencing principles and all relevant facts and circumstances, then review of the challenged sentence is purely de novo without the presumption of

correctness. *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991); *see also Carter*, 254 S.W.3d at 344-45.

In conducting a de novo review of a sentence, this Court must consider (a) the evidence adduced at the trial and the sentencing hearing; (b) the presentence report; (c) the principles of sentencing and arguments as to sentencing alternatives; (d) the nature and characteristics of the criminal conduct involved; (e) evidence and information offered by the parties on the enhancement and mitigating factors set forth in Tennessee Code Annotated sections 40-35-113 and 40-35-114; (f) any statistical information provided by the Administrative Office of the Courts as to Tennessee sentencing practices for similar offenses; and (g) any statement the defendant wishes to make in the defendant's own behalf about sentencing. Tenn. Code Ann. § 40-35-210(b); *see also Carter*, 254 S.W.3d at 343*; State v. Imfeld*, 70 S.W.3d 698, 704 (Tenn. 2002).

The Community Corrections Act was meant to provide an alternative means of punishment for "selected, nonviolent felony offenders . . . , thereby reserving secure confinement facilities for violent felony offenders." Tenn. Code Ann. § 40-36-103(1); *see also State v. Samuels*, 44 S.W.3d 489, 492 (Tenn. 2001). Pursuant to statute, persons who satisfy all of the following minimum criteria are eligible for participation in a community corrections program:

> (A) Persons who, without this option, would be incarcerated in a correctional institution;
>
> (B) Persons who are convicted of property-related, or drug/alcohol-related felony offenses or other felony offenses not involving crimes against the person as provided in title 39, chapter 13, parts 1-5;
>
> (C) Persons who are convicted of nonviolent felony offenses;
>
> (D) Persons who are convicted of felony offenses in which the use or possession of a weapon was not involved;
>
> (E) Persons who do not demonstrate a present or past pattern of behavior indicating violence; [and]
>
> (F) Persons who do not demonstrate a pattern of committing violent offenses[.]

Tenn. Code Ann. § 40-36-106(a)(1). However, persons who are sentenced to incarceration or who are on escape at the time of consideration will not be eligible, even if they meet these criteria. *See* Tenn. Code Ann. § 40-36-106(a)(2).

Persons who do not otherwise satisfy the minimum criteria and who would usually be considered unfit for probation due to histories of chronic alcohol abuse, drug abuse, or mental health problems, but whose special needs are treatable and could be served best in the community may be considered eligible for participation in a community corrections program. Tenn. Code Ann. § 40-36-106(c).

Even though an offender meets the requirements for eligibility, he or she is not automatically entitled to participation in a community corrections program. *See State v. Ball*, 973 S.W.2d 288, 294 (Tenn. Crim. App. 1998); *State v. Taylor*, 744 S.W.2d 919, 922 (Tenn. Crim. App. 1987). Rather, the Act provides that the criteria shall be interpreted as minimum standards to guide a trial court's determination of whether that offender is eligible for community corrections. *See* Tenn. Code Ann. § 40-36-106(d).

Defendant's prior record includes convictions for aggravated robbery and assault. Whether or not these prior convictions exclude Defendant from meeting the minimum requirements for eligibility for community corrections, his history clearly shows that no alternative sentencing is appropriate in this case. As detailed above, his past record of committing offenses both outside the prison system and while incarcerated show little chance of rehabilitation. Defendant is not entitled to relief in this appeal.

## CONCLUSION

The judgment of the trial court is affirmed.

_____
THOMAS T. WOODALL, JUDGE

-8-